IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLADIS CALLWOOD, as Administratrix of the Estate of KHARI NEVILLE ILLIDGE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:15CV182-WHA |
| PHENIX CITY, ALABAMA, a municipal Corporation; JAY JONES, individually; CHARLES W. JENKINS, JR., individually and in his official capacity as Lee County Deputy Sheriff; RAY SMITH, individually and in his official capacity as Lee County Deputy Sheriff; JOEY WILLIAMS, individually and in his official capacity as Phenix City Police Officer DAVID BUTLER, individually and in his official capacity as Phenix City Police Officer SHAWN SHEELY, individually and in his official capacity as Phenix City Police Officer and RAYMOND SMITH, individually and in official capacity as Phenix City Chief of Police, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | (wo) |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on a Motion for Partial Dismissal (Doc. #23), filed by Defendants Sheriff Jay Jones ("Jones"); Charles Jenkins, Jr. ("Jenkins"); Steven M. Mills ("Mills"); and Ray Smith.

The Plaintiff filed a Complaint and an Amended Complaint.  The Plaintiff brings 42 U.S.C. §1983 claims for Excessive Force against Mills, Ray Smith, and Jenkins (Count I); Excessive Force against Jones (Count II); Excessive Force against Raymond Smith and Phenix

City (Count III); Excessive Force against David Butler ("Butler"), Joey Williams ("Williams"), and Shawn Sheely ('Shelly") (Count IV); Failure to Intervene against Mills, Smith, Butler, Williams, Sheely, and Jenkins (Count V); Failure to Train and Supervise against Phenix City (Count VI);   Failure to Train and Supervise against Ray Smith, Jones, Mills, and Raymond Smith (Count VII), Failure to Discipline against Defendant Jones (Count VIII), and brings a Wrongful Death claim under state law against all Defendants (Count IX).

The court has federal question subject matter jurisdiction over the federal claims and can exercise supplemental subject over the state law claims.

The Phenix City Defendants, Raymond Smith, Phenix City, Joey Williams, David Butler, and Shawn Sheely Answered, and did not file a Motion to Dismiss.

The Partial Motion to Dismiss filed by the remaining Defendants is not directed to Count I as to Mills and Ray Smith or Count V as to Mills and Jenkins.   The Partial Motion to Dismiss is brought as to the claims against Jenkins in Count I; against Jones as to Count II, VII, and VIII against Ray Smith as to Count V and VII; against Mills as to Count VII; and against Jones, Jenkins, Mills, and Ray Smith in Count IX.

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED, but the Plaintiff will be given leave to file a new Amended Complaint which repleads an excessive force claim against Jenkins and supervisory liability claims against Jones.

## II.   MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).    In analyzing the sufficiency of pleading, the court is guided by a

two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III.  FACTS

The allegations of the Plaintiff's Amended Complaint, relevant to the pending Partial Motion, to Dismiss are as follows:

In March of 2013, Khari Neville Illidge ("Illidge") was at a friend's home when he suffered a medical or mental issue which caused him to leave the home on foot and naked. A 911 call was received about a naked man walking down Lee Road 314, and Defendants Mills and Ray Smith, deputies with the Lee County Sheriff's Office, responded to the call. Jones is the Sheriff of Lee County.

Mills witnessed Illidge, observed that he had scrapes and abrasions, called for back-up and requested the Phenix City Police Department to send additional units. Illidge turned and began walking toward Mills, who pulled out his TASER and fired it at Illidge. Illidge pulled a TASER tag from his skin, and Mills tasered Illidge until he fell to the ground. Mills jumped on top of

Illidge and tasered him additional times. Illidge stood up and began walking away from Mills. Mills went to his patrol car and called for immediate back-up. He did not inform dispatch that Illidge was unresponsive or in possible need of medical or psychiatric assistance. Mills followed Illidge and observed him climb a barbed wire fence without apparent signs of pain.

Lee County Deputy Sheriff Ray Smith joined the foot pursuit. Mills and Ray Smith pursued Illidge and approached him at the back door of a residence. Defendant Butler of Phenix City arrived on the scene. Mills and Ray Smith are alleged in the Amended Complaint to claim that they shouted commands to Illidge, but that he did not respond and walked toward the Defendants. Ray Smith tasered Illidge and Ilidge fell to the ground. Mills and Butler jumped on top of Illidge. Defendant Jenkins was also present at the scene.

Phenix City officers, Williams and Sheely, arrived and jumped on top of Illidge who was attempting to stand. The officers stated that Illidge was unresponsive and had "super-human" strength as he attempted to stand.

Illidge was restrained using leg shackles. Illidge was transferred by ambulance to a hospital where he was pronounced dead. An autopsy was performed and the cause of death was sudden cardiac arrest due to fatal arrythmyia.

## IV.   DISCUSSION

The moving Defendants seek dismissal of all §1983 official capacity claims against them, assert the qualified immunity defense to §1983 claims against them in their individual capacities, and assert state-agent immunity to the state law wrongful death claim. The court notes that the moving Defendants have reiterated in their Reply that they have not moved for dismissal of either the unreasonable use of force claims against the deputy sheriffs who actually used a TASER against Illidge or who were present and arguably in a position to intervene. (Doc. #35 at p.2).

4

**Federal Claims**

A.   Official Capacity Claims

In the prayer for relief, the Amended Complaint seeks an injunction of unlawful policies, practices, and procedures. (Doc. #2 at p.21).   The Defendants argue that the Plaintiff's claims for equitable relief against them in their official capacities are due to be dismissed because Illidge is deceased, so there is no threat of repeated injury, and the Plaintiff does not have standing to seek equitable relief.   *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir.2001) (stating that in addition to past injury, a plaintiff seeking injunctive relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."). The Defendants further state that the official capacity claims for damages are barred by the Eleventh Amendment because they are sheriffs and deputy sheriffs, and that they are not persons under 42 U.S.C. §1983.   *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 n.3, 1527 (11th Cir. 1990).

The Plaintiff does not respond to these arguments, and apparently concedes these points. Therefore, the §1983 official capacity claims against the moving Defendants are due to be dismissed.

B.   Qualified Immunity

The moving Defendants seek dismissal of some of the 42 U.S.C. §1983 claims asserted against them, arguing that the claims are barred by qualified immunity.

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir.1991).   As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.   *See Rich v.*

*Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).   Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"   *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler* 323 F.3d 872, 878 (11th Cir. 2003).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *United States v. Lanier*, 520 U.S. 259, 270 (1997).   In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Defendants state that the incident giving rise to the claims in this case arose from deputy Mills, Ray Smith, and Jenkins carrying out their duties to effect an arrest and Sheriff Jones' status as supervisor.   The Plaintiff does not dispute that the Defendants were acting within their discretionary authority.

The court now turns to the issue of whether the Plaintiff has sufficiently alleged a violation of clearly established law as to the claims against the moving Defendants.

1. Jenkins

The claim in Count I is an excessive force claim brought against multiple Defendants, including Jenkins.   The Defendants argue that there is no allegation that Jenkins used a TASER on Illidge, so the Amended Complaint does not state a claim of excessive force against Jenkins. The claim in Count I specifically states that Jenkins was present but did not intervene.   (Doc. #2 at p.12).   The Defendants have not moved for dismissal of the separate failure to intervene claim

against Jenkins which is brought in Count V.   They only move as to the excessive force claim asserted in Count I.

The Plaintiff responds that Jenkins had a duty to intervene in the use of the TASER and that six officers piled on Illridge.   The Plaintiff cites to *Harper v. Perkins*, 459 F. App'x 882 (11th Cir. 2012).   In *Harper*, the court held that an officer who did not discharge a TASER was not shielded from liability because the defendants "all concurred through their speech and conduct that they should use Tasers to bring Plaintiff down from the tree.   Moreover,   . . .   a police officer has an obligation to intervene to prevent or stop the use of excessive force."   *Id.* at 828.

The Plaintiff argues that because Jenkins concurred through his speech and conduct with the constitutional violation which was happening, he can be held liable for both excessive force and for the failure to intervene in excessive use of force. (Doc. #33 at p.16).   The Plaintiff also states that the weight of six officers piling on Illidge contributed to Illidge's death.

The Defendants reply that *Harper* did not recognize a new theory of liability, but rather stands for the proposition that an officer can be held liable for failure to intervene in an excessive use of force.

Even assuming that *Harper* recognized a separate cause of action against an officer who does not fire a TASER but is present when one is used and acts in a way which subjects him to liability, because the facts alleged against Jenkins in the Amended Complaint are merely that he did not intervene, the Amended Complaint does not state a separate claim for excessive force against Jenkins.   Although referenced in the brief, there is no allegation in the Amended Complaint that Jenkins and other officers verbally agreed with one another to use the TASER.   Also, while the Plaintiff points out in his brief that there is an allegation in the Amended Complaint that between 4-6 officers were piled on Illidge at some point (Doc. #2 at p.8), even assuming that

such conduct could constitute a clearly established constitutional violation, there is no allegation that Jenkins was one of these officers.  (Doc. #2 at p.8)(identifying Mills, Butler, Williams, and Sheely).

The court concludes that the claim in Count I for excessive force against Jenkins is due to be dismissed because it merely states a claim for failure to intervene, which is separately asserted in Count V.  The Plaintiff, however, will be allowed to replead this claim and allege facts to support a claim against Jenkins for excessive force which is distinct from his failure to intervene claim, if the Plaintiff concludes that he can do within the requirements of Rule 11.

2.   Jones

The federal claims against Sheriff Jones are for excessive force (Count II), failure to train and supervise (Count VII), and failure to discipline (VIII).  Count II is only asserted against Jones and the factual allegations are that he created a policy or custom and was deliberately indifferent in supervising and training subordinates.  Count VII is a failure to train a supervise claim against Jones and others, and Count VIII is a claim brought only against Jones for failing to discipline deputies who improperly used a TASER.

As to Count II, the Defendants argue that Jones was not present at the scene, so cannot be held liable for an excessive use of force, and his only liability could be as a supervisor.  As to Counts VII and VIII, the Defendants state that there is no allegation of facts which establishes a causal relationship because there is no allegation that the supervisor had notice of a widespread history of abuse, a custom or policy had been implemented which resulted in deliberate indifference to constitutional rights, or the supervisor directed the subordinates to act unlawfully, citing *Gonzales v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  The Defendants also cite to *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), in which claims against supervisors were

dismissed because the plaintiffs did not allege that the supervisors had knowledge of two officers' failure to monitor inmates.

The Plaintiff responds that Jones maintained a custom or policy causally related to Illidge's death because the Complaint asserts facts which establish that Jones was aware of excessive force by his deputies, and failed to take corrective action.  The Plaintiff cites to paragraphs 44-46, 47, 48 of the Amended Complaint which state that TASER probe deployments to the chest have been shown to cause fatal cardiac arrhythmias, that TASER product warnings warn against using the TASER in the upper chest area, and at the end of each five-second cycle of the TASER, an officer should reassess the effectiveness of the TASER.  The Amended Complaint alleges that Jones was "aware of the use of excessive force" and failed to take corrective action. (Doc. #2, pages 9-10). Although not relied on in the argument by Plaintiff, the court notes that in another section of the Amended Complaint, the Plaintiff alleges that Jones and his agents had notice that deputies tasered individuals in the chest and failed to discipline deputies who tasered individuals in the chest. (Doc. #2 at p.19).  The Plaintiff states that Jones had a policy or custom of failing to discipline deputies. *Id.*

With respect to the claim in Count II, the court agrees that there is no factual basis for a claim against Jones directly for excessive force.  The only claims argued by the Plaintiff in response to the Motion to Dismiss are supervisor-liability claims.  Therefore, Count II is due to be dismissed as duplicative of the other claims.

 "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quotation omitted).  The allegation that Jones was aware of excessive force is not specific to the use of a TASER, and the

9

allegation in the later section of the Amended Complaint that Jones "had notice," is a conclusory one which the court should not consider. *See Ashcroft,* 556 at 678. There is no factual allegation of widespread misuse of the TASER, or facts from which to conclude that Jones had knowledge or notice of misuse, and this claim is due to be dismissed. *See Weiland*, 792 F.3d at 1329 (noting that the complaint contained the conclusory allegation that the Sheriff's Office was "on notice" of the need to "promulgate, implement, and/or oversee" policies pertaining to the "use of force," but stating that no facts were alleged to support that conclusion). The court concludes, however, that it will grant the Plaintiff's request to be allowed to replead these claims to add more specific facts to adequately state a claim based on a policy or custom of a failure to train, supervise, or discipline as a basis for holding Jones liable in this case.

3.   Ray Smith

Count V is a failure to intervene claim against Ray Smith and others. The Defendants acknowledge that an officer who refuses to intervene when a constitutional violation occurs can be held liable, but argue that under the facts alleged in this case, Ray Smith was never in a position to intervene in the use of a TASER. Ray Smith arrived after Mills used a TASER, and then Ray Smith himself used the TASER. (Doc. #33 at ¶33, 34, 36, 38). The Defendants argue that Ray Smith could not intervene with Mills' use of the TASER because he was not present at the scene at that time, and Ray Smith cannot be held liable for failing to intervene in his own use of the TASER.

Ray Smith also is named in the claim in Count VII for failure to train and supervise. The Defendants incorporate the arguments advanced by Jones with regard to the lack of allegations of a policy and custom. The Defendants additionally argue that Ray Smith used the TASER and cannot be held liable for failure to supervise himself.

The Plaintiff cites to case law for the inappropriateness of the use of the TASER, but does not respond to the particular arguments advanced by the Defendants.

The court agrees with the Defendants' reading of the Amended Complaint.  According to the facts of the Amended Complaint, Ray Smith came on the scene after Mills used the TASER, and then Ray Smith solely used the TASER.  There are no facts which would support a claim that Ray Smith failed to intervene in a use of the TASER by anyone else, and there is no allegation of a policy or custom by Ray Smith.  Therefore, the Motion to Dismiss is due to be GRANTED as to the failure to intervene claim in Count V and the failure to supervise claim in Count VII as to Ray Smith.  Because the dismissal is based on the facts as pled, and the Plaintiff has not referred in brief to any facts which could be added to the Amended Complaint to state these claims, the dismissal will be with prejudice.

4.  Mills

Count VII is a claim for failure to train and supervise which is brought against Mills and others.   With regard to Mills, the Plaintiff alleges that Mills failed to prevent Ray Smith from tasering Illidge. (Doc. #2 at ¶106).   The Amended Complaint also states that Mills, as a supervisor, failed to intervene and tell Ray Smith to stop using the TASER.   (Doc. #2 at ¶36). The Amended Complaint separately asserts a failure to intervene claim against Mills in Count V.

The Defendants state that Mills cannot be held liable for failure to supervise.   The Defendants argue that only Mills and Ray Smith used the TASER, so Mills cannot be liable for failing to supervise himself, and there is no allegation of policy or custom upon which to base supervisory liability.

The Plaintiff does not respond to the arguments advanced by the Defendants with regard to a claim against Mills for failure to train and supervise. The Plaintiff does not argue that Mills

11

established a policy or custom, arguing instead that the policy or custom was established by Jones, as discussed above.

There is no factual allegation to support supervisory liability. The claim in Count VII is a failure to intervene claim, which has also been asserted in Count V. Therefore, the court concludes that the claim in Count VII does not state a separate claim, and is due to be dismissed as to Mills.

## State Law Claims

Defendants Jones, Mills, Ray Smith, and Jenkins move for dismissal of the state law wrongful death claim in Count IX on the basis of sovereign immunity. The Defendants rely on Eleventh Circuit case law on the subject of the sovereign immunity of sheriffs under Alabama law.

"[U]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir.1996). Exceptions to sovereign immunity apply only in situations where plaintiffs are seeking injunctive relief against a sheriff or deputy sheriff. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) (stating that "[t]he Alabama Supreme Court explained that under Article I, § 14 [of the Alabama Constitution], the *only* exceptions to a sheriff's immunity from suit are actions brought to *enjoin* the sheriff's conduct.") (emphasis in original).

The Plaintiff responds that an exception to sovereign immunity which allows for damages applies in this case, citing *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013). In *Ex parte Moulton* the court set out six exceptions to sovereign immunity and stated that the sixth exception to sovereign immunity can apply in actions for damages brought against state officials in their individual capacities where it is alleged that they acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in

effect, one against the State. *Id.*   *Ex parte Moulton*, however, is not a case involving sheriffs or sheriff's deputies.

It does not appear that the sixth exception as restated in *Ex parte Moulton*, and relied on by the Plaintiff in this case, applies to sheriffs or sheriff's deputies.   In *Poiroux v. Rich*, 150 So. 3d 1027, 1037 (Ala. 2014), although the court quoted from the *Ex parte Moulton* decision in setting out sovereign immunity law, when the court stated the exceptions to sovereign immunity which can apply to sheriffs, it identified only five exceptions. *Id.* at 1038.   The *Poiroux* court quoted from the *Ex parte Donaldson* decision and stated that "[e]xceptions to State immunity for sheriffs (and their deputies) that have been recognized" are (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.   *Id.* (quoting *Ex parte Donaldson*, 80 So. 3d 895, 898 n.1 (Ala. 2011)).   The *Ex parte Donaldson* decision also stated that because "sheriffs are constitutional officers and because deputy sheriffs act on behalf of sheriffs as alter egos, a claim for monetary damages made against a deputy sheriff in his or her individual capacity is barred by the doctrine of State immunity whenever the acts that form the basis of the alleged liability were being performed within the line and scope of the deputy sheriff's employment."   *Ex parte Donaldson*, 80 So. 3d at 899.   The *Poiroux* court went on to conclude that because the claims against the sheriffs in that case did "not fall within any of the recognized exceptions to the sovereign immunity accorded sheriffs, *see Ex parte Donaldson*," the sheriffs in that case were entitled to sovereign immunity.   150 So. 3d at 1038-39.

Under the *Poiroux* decision of the Alabama Supreme Court, and binding Eleventh Circuit

precedent, the exception claimed by the Plaintiff does not apply to these Defendants. The state law wrongful death claims against Jones, Ray Smith, Mills, and Jenkins are due to be dismissed on the basis of sovereign immunity.

## V. CONCLUSION

The Partial Motion to Dismiss (Doc. #23) is due to be and is hereby ORDERED GRANTED as follows:

1. All official capacity 42 U.S.C. §1983 claims for damages against Defendants Jay Jones; Charles Jenkins, Jr.; Steven M. Mills; and Ray Smith are DISMISSED as barred by Eleventh Amendment immunity and for equitable relief are DISMSSED for lack of standing.

2. Count I against Charles Jenkins, Jr. individually is DISMISSED without prejudice to being repled.

3. Count II against Jay Jones individually is DISMISSED with prejudice as being duplicative of other counts.

4. Count V for failure to intervene against Ray Smith individually is DISMISSED with prejudice.

5. Count VII as to Ray Smith and Steven M. Mills individually is DISMISSED with prejudice.

6. Counts VII and Count VIII against Jay Jones are DISMISSED without prejudice to being repled.

7. Count IX is DISMISSED on the basis of sovereign immunity as to Jay Jones; Charles Jenkins, Jr.; Steven M. Mills; and Ray Smith.

The Plaintiff is given until September 22, 2015 to file a new Amended Complaint in

accordance with this Memorandum Opinion, which is complete unto itself in accordance with the Local Rules (M.D. Ala. L. Rule 15.1), and which more specifically states a claim for supervisory liability against Jay Jones, and which more specifically states a claim for excessive force against Charles Jenkins, Jr., should the Plaintiff choose to pursue those claims.

Done this 8th day of September, 2015.

   /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE